**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 18, 2021[*]
Decided July 13, 2021

*Before*

DIANE S. SYKES, *Chief Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-2653

| | |
|---|---|
| ANTONIO MAYS,<br>*Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Eastern District of Wisconsin. |
| *v.* | No. 18-cv-1057-pp |
| ANTHONY EMANUELE, et al.,<br>*Defendants-Appellees*. | Pamela Pepper,<br>*Chief Judge*. |

**O R D E R**

Antonio Mays sued several officers at the Milwaukee County Jail alleging that they violated his Fourteenth Amendment right to due process by requiring him to remain in his cell after his toilet overflowed until a plumber and cleaning crew could be summoned to fix the problem. The wait was brief, lasting only about an hour, and the jail was on lockdown because of a security event. Mays also alleged that on a separate

---

[*]We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

occasion officers unlawfully refused to let him flush his toilet during an hour-long jail-wide contraband search.

The district court entered summary judgment for the officers, concluding that their actions were rationally related to a legitimate nonpunitive purpose—namely, security—and were not excessive in relation to that purpose. We agree. No rational juror could find that the two brief interruptions in cell sanitation posed an objectively serious threat to Mays's health or that the officers' response was objectively unreasonable under the circumstances.

May's first claim centers on an incident that occurred on May 10, 2018. At about noon that day, the toilet in his cell backed up, spilling water, feces, and urine onto the floor. He called to Valbona Ndina, the officer assigned to his cell block, about the overflow. Ndina summoned a plumber and cleaning crew, and she shut off the water to the toilet so it would stop overflowing. But she did not move Mays out of the cell while she waited for help to arrive. The jail was in a lockdown following a security event, and inmates were restricted to their cells. (She also worried that it was unsafe to move him because he was agitated; Mays disputes that he was angry.) Fifteen minutes after taking these actions, Ndina returned to Mays's cell. Because of the lockdown, she brought lunch to detainees, including Mays, in their cells. Mays told her that he did not want to eat in his dirty cell. Ndina assured him that she had called for help and would call again, which she did (twice). Rather than wait for help to arrive, Mays sat on his bed and began to eat. As he did, his sock momentarily touched the dirty water on the floor. He immediately removed it; his skin never touched the water. At about 1 p.m., an hour after the problem started, the plumber and cleaning crew arrived. Mays was removed from his cell while they fixed the toilet and cleaned the cell. He did not become ill from the incident.

The second incident occurred on June 13, 2018, while jail staff were searching all cells for contraband. After Mays's cell was searched, he began to eat breakfast and then used the toilet. But he could not flush because staff had shut off the water to all toilets—the normal procedure during cell searches to keep detainees from flushing contraband and to avoid plumbing damage. Mays says he asked Officers Anthony Emanuele, Crystalina Montano, and Khadeja Dismuke to turn the water back on to his toilet, but they refused. Mays continued eating, but his cell began to smell. About an hour after the search began, the water was turned back on. Again, Mays did not become ill from this incident.

Mays sued Ndina, Emanuele, Montano, Dismuke, and other jail staff for damages under 42 U.S.C. § 1983. He alleged that that their responses to these sanitation problems in his cell violated his right to due process under the Fourteenth Amendment. Ruling for the officers at summary judgment, the judge noted that Ndina was the only officer who knew about the toilet overflow and that her actions were justified by the legitimate nonpunitive purpose of maintaining safety during the lockdown. Regarding the second incident, the judge concluded that the officers' decision to keep the toilet water off was reasonably related to the nonpunitive purpose of searching the jail for contraband.

On appeal Mays argues that the judge wrongly credited the defendants' version of events. Not so. To prove his claim for violation of his right to due process, Mays needed to furnish evidence that the conditions in his cell posed an objectively serious threat to his health; that the officers' response was objectively unreasonable under the circumstances; and that they acted purposely, knowingly, or recklessly with respect to the consequences of their actions. *See Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019); *id.* at 827 (Sykes, J., concurring); *Miranda v. County of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018). A jail official's response to serious conditions of confinement is objectively unreasonable when it is "not rationally related to a legitimate nonpunitive governmental purpose" or is "excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quotation marks omitted); *see also Hardeman*, 933 F.3d at 824, 827.

The judge faithfully applied these principles and correctly concluded that no reasonable juror could find for Mays. For starters, as we observed in *Hardeman*, "[a] single clogged toilet does not violate the Constitution." 933 F.3d at 823. And Ndina's response to the toilet overflow was fully consistent with her constitutional obligations. She took prompt action—stopping the water to the toilet and calling for help—and her decision not to move Mays from his cell right away was justified by the lockdown. We defer to jail officials in matters of jail security if their actions are proportionate to the underlying security concern. *Mays v. Dart*, 974 F.3d 810, 820–21 (7th Cir. 2020). Keeping Mays in his cell for about an hour until help arrived was neither excessive nor disproportionate in relation to the security needs of the lockdown. *See id.*; *Hardeman*, 933 F.3d at 824. Because the lockdown alone justified keeping Mays in his cell for the brief duration of the delay, Mays's dispute about whether Ndina refused to move him for the added reason that he was "agitated" is immaterial.

Mays's claim against Emanuele, Montano, and Dismuke about the water shutoff fails for the same reason. Jail staff reasonably shut off the water to the toilets in the cells so they could conduct an effective search without inmates flushing contraband. No evidence suggests that this reasonable safety and security measure was illegitimate or that shutting off the toilet water for an hour was excessive in relation to that goal. *See Mays*, 974 F.3d at 820–21.

No other defendant was involved in either incident, so the judge properly entered summary judgment for all defendants. *See Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017).

AFFIRMED